337 So.2d 508 (1976)
STATE of Louisiana
v.
Lawrence E. JACKSON.
No. 57747.
Supreme Court of Louisiana.
September 13, 1976.
*509 Alvin N. Taylor, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
*510 CALOGERO, Justice.
Defendant was charged by bill of information with the armed robbery (La.R.S. 14:64) of Lawrence Fagan on April 5, 1973, at the Triangle Bar, 916 St. Mary Street in New Orleans. Defendant was tried, convicted by a jury and sentenced to serve twenty years at hard labor. Defendant has filed three bills.

BILL OF EXCEPTIONS NO. 1.
This bill was taken to the court's denial, following a hearing, of defendant's Motion to Suppress Identification. The motion alleged generally that "defendant was viewed under circumstances which suggested that he was the perpetrator of the crime for which he is charged herein" and that the identification was therefore tainted and should be suppressed.
At approximately 10:05 P.M. on the night of April 5, 1973, Lawrence Fagan was tending bar as the Triangle Bar when a man walked in with a gun and announced "this is a hold-up." He pointed the gun in Fagan's face and forced him to lie on the floor while he removed the money from the register and robbed a customer, Mr. Jack Delancey. After the man left, Fagan called the police to report the robbery and described the perpetrator as a slim black male, in his early twenties, wearing a blue coat or shirt and dark grey pants. Fagan admitted on trial of the motion to suppress that he had not gotten a "good" look at the man's features because the man had worn a scarf over his face throughout the robbery; he did, however, view him at close range and get a glimpse of his face beneath the mask. Approximately ten minutes after Fagan had made his report, the police apprehended a man a block and a half away from the Triangle Bar who fit the description Fagan had give them. This was the defendant, Lawrence E. Jackson. Defendant was then transported back to the scene of the crime where he was shown to Fagan and Jack Delancey, both of whom immediately identified defendant as the robber. Less than fifteen minutes had elapsed between the robbery and these identifications. Both Fagan and Delancey, as well as the patrolman who had exhibited defendant to them at the scene, testified that the identifications were made voluntarily, and that the police did not suggest to them that defendant was the robber. The only hint of suggestion which appears in the transcript is Delancey's statement that after he had made his identification, the police had held a mask up to defendant's face; however, this could not have ex post facto tainted the identification.
On April 16, 1973, defendant was exhibited in a line-up with six other men and identified by Fagan. Although Delancey was present at the line-up, he could not make a positive identification. According to the officer conducting the line-up, all of the members of the line-up fit defendant's description. Both Fagan and Delancey made in-court identifications of defendant at trial.
The test of a pre-indictment identification is whether the confrontation was so unnecessarily suggestive and conducive to mistaken identification as to deny the defendant due process of law. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Although showups, such as the one here, are not favored, due process is not violated if the "totality of the circumstances" indicates that the identification was reliable. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). See State v. Cloud, 319 So.2d 793 (La.1975), which involved similar facts.
There appears to have been an independent basis for both witnesses' identifications. The robber confronted both of them at close range and each got a glimpse of his face beneath the mask.
Delancey's identification at trial was perhaps less credible than was Fagan's in view of his admission that while certain of the identification, both at the confrontation minutes after the robbery and at trial, he had been unable to pick defendant out of the line-up held eleven days after the robbery. This admission affected the weight which the trial jury afforded Delancey's *511 testimony. It does not establish that the confrontation was either impermissible, unnecessarily suggestive or conducive to mistaken identification.
Fagan's identification on the other hand was unassailable. He was certain with respect to the identification which he made at the scene of the armed robbery and at trial and he did select defendant as the robbery at the line-up.
In any event the in-court identifications of the two witnesses was not tainted, due process was not violated, and bill number one has no merit.

BILL OF EXCEPTIONS NO. 2.
Defendant claimed that his confession and other physical evidence seized by police was not obtained incidental to a valid arrest or search, and should therefore be suppressed. The motion was denied after a hearing and this bill was reserved.
Officer L. J. Canal testified that shortly after ten o'clock p.m. he received a report of an armed robbery on his police radio, and a description of the robber as being five feet, ten inches tall, with a medium build, and wearing dark clothing. A few minutes later, the officer observed defendant, who fit that description, walking several blocks away from the scene of the crime. The officer stated that as he stopped defendant, he noticed a large bulge in defendant's waistband which he suspected was a gun, and that he frisked defendant and retrieved a fully loaded Walther T-38 automatic. Defendant was arrested and his handkerchief later seized after the witnesses identified it as that which defendant had worn as a mask during the robbery. There was no mention of a confession either at the hearing on the motion, or at trial.
The officer's unrebutted testimony established that he had a right to seize the pistol from defendant's waistband. La.C.Cr.P. art. 215.1 gives a law enforcement officer the right to stop any person in a public place when he has reasonable grounds to believe that person is committing, has committed, or is about to commit a crime. Under the circumstances of this case, it is submitted that the officer had reasonable cause to make an investigatory stop: defendant was in the immediate vicinity of the robbery minutes after it occurred and fit the description of the robber broadcast on the police radio. Incident to a reasonable stop, article 215.1 authorizes an officer to make a limited search of the suspect's clothing for a dangerous weapon; it was in following this procedure that the officer recovered defendant's gun.
Article 213 of the La. Code of Criminal Procedure provides that:
"[A] peace officer may, without a warrant, arrest a person when:
* * * * * *
(3) The police officer has reasonable cause to believe that the person to be arrested has committed an offense although not in the presence of the officer."
In State v. Johnson, 319 So.2d 786 (La.1975), the Court found that officers had reasonable cause to arrest a defendant who was apprehended in the area where a crime was known to have been committed and who matched the description of the suspect. Thus, the warrantless arrest in this case was valid, and having arrested defendant, the officer was justified in seizing the handkerchief. The Court said in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969):
"In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction."
This bill is without merit.

BILL OF EXCEPTIONS NO. 3.
During the cross-examination of Jack Delancey at trial, defense counsel questioned him as to his memory of the robber, his clothing and the scarf he had worn over his face; then, turning away from the witness, counsel asked the witness to describe his features and clothing. The witness responded that he could not answer because "I haven't been paying that much *512 attention to you." On re-direct examination, the district attorney asked Delancey whether he would have paid more attention to defense counsel if he had committed an armed robbery, and defense counsel objected to the question. The judge ruled that the defense had opened this area on crossexamination, and he thus permitted the question to be put to the witness. Counsel reserved this bill of exceptions without further specifying the grounds for his objection. His formal bill of exceptions states that "the objection was to the court ruling that the State's witness could not identify his articles of clothing because Mr. Delancey was not paying attention." This was not the court's ruling (the ruling was only to allow the question), but the witness' answer. The question was proper re-direct examination in light of defense counsel's earlier question and it was a proper exercise of the court's discretion to permit it. Bill number three has no merit.
Accordingly defendant's conviction and sentence are affirmed.