349 So.2d 270 (1977)
STATE of Louisiana
v.
Frank THOMAS and Alberta Talbert.
No. 59088.
Supreme Court of Louisiana.
June 20, 1977.
Rehearing Denied September 2, 1977.
*271 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Brian G. Meissner, Asst. Dist. Atty., for plaintiff-appellee.
Elizabeth A. Cole, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
PER CURIAM.
Defendants were charged with possession of heroin with intent to distribute, La.R.S. 40:966(A). Frank Thomas was convicted as charged and sentenced to life imprisonment at hard labor. Alberta Talbert was convicted of possession of heroin and sentenced as a multiple offender, La.R.S. 15:529.1, to four years at hard labor. Upon appeal, we find merit in their assignment of error relating to the denial of the motion to suppress the heroin seized incidental to defendants' arrests.
On August 8, 1975, at approximately 1:25 p.m., two New Orleans policemen on routine patrol drove through a semi-circular driveway in a housing project.[*] They observed Alberta Talbert, whom they did not know at the time, seated on the passenger side of an automobile legally parked in the driveway. Then the officers saw Frank Thomas walking towards the car carrying in his hands a tinfoil covered object about the size of a baseball. One policeman had previously participated in numerous arrests involving heroin wrapped in foil. The patrol car was unmarked and the policemen were in plain clothes. Frank Thomas looked in the direction of the officers, lowered the package to his side and quickened his pace. He entered the parked vehicle as the patrol car pulled alongside. One officer observed Thomas hand the tinfoil package to Alberta Talbert, who transferred it to her right side. After coming to a stop slightly past the parked car, the officers got out and approached Thomas' vehicle. The officers told Thomas and Talbert that they were under arrest and asked them to step out of the car. One of the policemen then recovered the package from behind the door handle on the passenger side of the car. He removed the tinfoil wrapper and found two inner packages containing 49 packets of brownish powder. The officers testified that they had recognized Frank Thomas before the arrest. Both claimed to know that he was a user of heroin and a suspected pusher. However, the officers did not disclose any of the facts upon which they based these conclusions.
The Fourth Amendment to the United States Constitution provides:
"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
Article I, § 5 of the 1974 Louisiana Constitution provides:
"Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court."
*272 A warrantless arrest, no less than an arrest pursuant to a validly issued warrant, must be based on probable cause. State v. Ranker, 343 So.2d 189 (La.1977); State v. Jackson, 337 So.2d 508 (La.1976); State v. Scott, 320 So.2d 538 (La.1975); State v. Terracina, 309 So.2d 271 (La.1975); State v. Odom, 292 So.2d 189 (La.1974). Probable cause exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); State v. Marks, 337 So.2d 1177 (La.1976); State v. Randolph, 337 So.2d 498 (La.1976); State v. Gilmore, 323 So.2d 459 (La.1975); State v. Wood, 262 La. 259, 263 So.2d 28 (1972). While the officer need not have sufficient proof to convict, mere suspicion is not enough to justify an arrest. State v. Ranker, supra; State v. Randolph, supra.
LaFave, "Street Encounters" and the Constitution: Terry, Sibron, Peters and Beyond, 67 Mich.L.Rev. 40, 73-74 (1968) observes:
"As to the probability required for an arrest, it may generally be stated that it must be more probable than not that the person has committed an offense, although this is less certain as to the probability that a particular person is the offender than to the probability that a crime has been committed by someone. In the latter situation, which assumes central importance when there is no doubt who the offender is if a crime has been committed, courts ordinarily require that criminal conduct be more probable than non-criminal activity. This approach is reflected in those decisions which say that there must be `more evidence for [the existence of criminal conduct] than against' or that the suspect's actions must be `inconsistent with any innocent pursuit,' and also in the many cases where grounds for arrest have been found lacking because the conduct of the suspect was equivocal, that is, where the possibility of criminal conduct was no greater than the possibility of innocent behavior." (Footnotes omitted.)
Applying these principles to the instant case, we conclude that the facts and circumstances within the officers' knowledge were insufficient to provide probable cause for the arrests. In essence, the officers acted on the following observed facts: (1) Frank Thomas was seen carrying an object wrapped in tinfoil, and one of the officers had seen foil used for packaging heroin in numerous other cases; (2) Thomas held the package on his side and quickened his pace, as if startled, after seeing the two plain clothes officers in the unmarked patrol car; and (3) after Thomas handed Alberta Talbert the package, she wedged it behind the door handle on her side of the car.
Undoubtedly, the policemen also acted on their belief that Frank Thomas was a user of heroin and their suspicion that he was also a distributor. However, without the underlying facts upon which this allegation was based, it is but a "bald and unilluminating assertion of suspicion" that is entitled to no weight in appraising the decision to seize and search the defendants. Spinelli v. United States, 393 U.S. 410, 414, 89 S.Ct. 584, 588, 21 L.Ed.2d 637, 643 (1969); Nathanson v. United States, 290 U.S. 41, 46, 54 S.Ct. 11, 78 L.Ed. 159, 161 (1933).
Assessing the trustworthy information that the record indicates was available to the officers before the arrest, it is apparent that there was less evidence pointing toward the existence of criminal conduct than against it at that time. Indeed, one suspect's actions in the middle of the day of walking from a residential housing project to his car with a tinfoil covered parcel and handing it to his female companion are not inconsistent with innocent pursuits. Nor did her conduct in placing the package on the other side of her person necessarily indicate an intention to secrete, rather than secure, the bundle. Thomas' behavior in dropping the package to his side and quickening his pace does seem somewhat suspicious. *273 But even if it be assumed that he also looked "startled," which is so much a matter of subjective judgment as to be of little reliability, the suspicions aroused are far outweighed by the possibilities of innocent behavior, considering all of the circumstances.
We conclude, then, that in the present case the facts and circumstances known to the arresting officers determinable from the record were not sufficient to provide probable cause for the arrests. This is not to say that the evidence would have failed to justify an investigatory stop for questioning. See, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and its progeny. See also, State v. Shivers, 346 So.2d 657 (La.1977) No. 59,080; State v. Kinnemann, 337 So.2d 441 (La.1976); State v. Cook, 332 So.2d 760 (La.1976); State v. Truss, 317 So.2d 177 (La.1975); State v. Saia, 302 So.2d 869 (La.1974). However, it is clear that the officers fully arrested the defendants for the commission of a crime and did not merely detain them for questioning. Accordingly, we need not reach the issue of whether such a detention would have been permissible.
As a consequence of the unconstitutional arrest or seizure of the defendants, the search and seizure of evidence incidental thereto was also unlawful. Any evidence produced as a result of an illegal search and seizure is tainted and thus inadmissible under the state and federal constitutions. U.S.Const. amend. IV; La.Const. art. I, § 5 (1974); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); State v. Fearn, 345 So.2d 468 (La.1977); State v. Ranker, supra; State v. Kinnemann, supra. Therefore, we hold that the trial court erred in denying defendants' motion to suppress.
For the reasons assigned, the convictions and sentences are reversed, and the case is remanded for a new trial.
SANDERS, C. J., and SUMMERS, J., dissents.
MARCUS, J., concurs.
NOTES
[*] For purposes of this opinion we will accept the version of facts as testified to by the officers.