347 So.2d 206 (1977)
STATE of Louisiana
v.
Thomas PHILLIPS.
No. 59122.
Supreme Court of Louisiana.
June 20, 1977.
*207 Ronald J. Rakosky, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Brian G. Meissner, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
Defendant, Thomas Phillips, was charged by bill of information with simple burglary of a McKenzie Bakery in New Orleans on May 19, 1975, in violation of La.R.S. 14:62. After electing to waive trial by jury, he was tried by a judge, found guilty as charged, and sentenced to serve five years imprisonment in the custody of the Department of Corrections. On this appeal, defendant assigns only one error for reversal of his conviction and sentence.
Prior to trial defendant filed three separate motions to suppress physical evidence seized and statements obtained from him following his arrest. By these motions defendant sought to suppress as evidence at trial all items seized during the search of his residence located at 3023 Desire Street, and during the search of his 1966 Mercury automobile, together with two written statements made by him after his arrest. The motions were consolidated for hearing and denied by the trial judge.
In his single assignment of error, defendant complains that the trial judge erred in refusing to grant his motions to suppress at trial the evidence hereinabove related. He contends that his warrantless arrest was not based upon probable cause and as a consequence all evidence seized and statements obtained after his arrest are the fruits of an illegal arrest and therefore were inadmissible at his trial.
It is true that any evidence obtained as a result of an unconstitutional and unlawful arrest must be excluded at trial based on the theory that the evidence is the fruit of the poisonous tree. Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *208 State v. Tarver, 324 So.2d 382 (La.1975). The crucial question presented in this case, however, is whether the officers had probable cause to arrest the defendant.
The circumstances surrounding defendant's arrest as developed at the motion to suppress hearing are as follows. On the afternoon of May 19, 1975, at approximately 2:40 p.m., Officers Alvin Alexander and Phillip Barre while on patrol were advised by police radio that an anonymous phone call had been placed informing the New Orleans Police Department Urban Squad that a subject described as "a negro male, approximately 5'8" tall, wearing a white T-shirt, blue pants, and pink undershorts" was dragging a safe in a driveway in the Desire Housing Project.
In response to this information, the two officers proceeded to the stated location and there observed a rather large safe[1] abandoned in the driveway. On closer inspection, the officers observed that the safe showed visible signs of having been forcibly opened. The door of the safe had been removed and there were numerous marks on the safe indicating that an acetylene torch had been used to gain entry into the safe. Officer Alexander testified that they were advised by their dispatcher that a second anonymous call had been placed informing the department that the subject who had been seen dragging the safe from the vehicle was standing in the hallway of 3023 Desire Parkway. Again, the unidentified caller gave a description of the subject as a Negro male, five feet eight inches tall, wearing in particular pink undershorts.[2]
Upon further investigating the scene, the officers observed a vehicle with its trunk up parked approximately thirty feet from the safe. There were drag marks on the concrete surface of the driveway running from the car to the location of the safe and particles of burnt metal which appeared to have come off the safe along this trail. Believing that the vehicle had been used to drag the safe across the driveway, the officers placed another call to their dispatcher giving the license number on the vehicle. Officer Alexander testified that they were advised that the car bearing that license number was registered in the name of Thomas Phillips. The officer stated that while he remained to investigate the parked vehicle, his partner, Phillip Barre, proceeded to the stated location and arrested the defendant Thomas Phillips who was standing in the hallway of one of the project apartment buildings. Officer Alexander testified that, when he observed the defendant, he was wearing a white T-shirt and very vivid pink undershorts exposed from the waist to the belt level; that defendant was advised of his rights and was charged with possession of stolen property; and at that time defendant said nothing except "What do you want me for?"
On the following day several detectives were assigned to the case and during the course of their investigation they obtained information positively connecting the safe with a burglary of a McKenzie Bakery. The safe containing approximately nineteen hundred dollars had been stolen from a McKenzie Bakery during the morning hours of May 19, 1975, the day of defendant's arrest. After being fully advised of his Miranda rights and after signing a waiver of rights form, defendant later made two statements in which he admitted his involvement *209 in the burglary. The officers obtained warrants to search defendant's residence and his automobile which had been transported earlier to the police pound. As a result of these searches, the officers seized a number of items which purportedly linked defendant with the McKenzie burglary.
We have repeatedly held that a warrantless arrest must be based on the arresting officer's reasonable belief that the person to be arrested has committed or is committing an offense.[3]State v. Ranker, 343 So.2d 189 (La.1977); State v. Jackson, 337 So.2d 508 (La.1976); State v. Scott, 320 So.2d 538 (La.1975). Probable cause and not absolute certainty that a crime is being or has been committed is the test to be applied in judging the validity of an arrest. Probable cause exists when the facts and circumstances within the arresting officers' knowledge and as to which they have reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person to be arrested has committed or is committing an offense. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); State v. Ranker, supra; State v. Marks, 337 So.2d 1177 (La. 1976); State v. Randolph, 337 So.2d 498 (La.1976); State v. Gilmore, 323 So.2d 459 (La.1975); State v. Johnson, 319 So.2d 786 (La.1975). While the officers need not be able to negate all possible lawful explanation of a situation before making an arrest, they must have within their knowledge information upon which to reasonably base a belief that the person to be arrested is criminally connected with the circumstances.
Defendant argues that at the time of his arrest the officers "had no specific knowledge" that a crime had been committed and that they did not have any information from which to reasonably conclude that he was in any way criminally connected with the safe burglary at the McKenzie Bakery. He argues that the officers did not have sufficient information to reasonably believe that a crime had been committed because the evidence showed that the police were not aware that the safe had been stolen from the McKenzie bakery until the day after his arrest.
Under the facts and circumstances here, we are convinced that the officers did have sufficient information to reasonably believe that a crime had been committed, even discounting the testimony of Officer Alexander as to the information about the bakery and the removal of a safe therefrom. The information received by the officers which prompted their initial investigation, the location where the safe was discovered, and its size and condition were sufficient to suggest criminal activity.
The only possibly troublesome question presented in this case is whether the officers had sufficient information to reasonably conclude that the defendant was in any way criminally connected with the safe. Defendant's position is that the only connection between himself and the safe was the anonymous uncorroborated tip from the unidentified informant whose reliability was not established. Defendant could be correct in this regard if that were all that the officers had. In fact, however, besides this very precise description of the defendant in successive calls, the first of which had him dragging the safe (i. e. in possession of a safe which was probably stolen), the officers also had visible physical evidence indicating the safe had been dragged from an automobile which they learned was registered in the name of the defendant.
The evidence is uncertain as to whether defendant was formally arrested before or after the officers learned of the car's registration. Officer Alexander testified that they had the information before defendant was arrested. At the very least, however, the officers learned that Phillips owned the car before he had been removed from the *210 scene and before he had made any incriminating statements. Even if at the moment he was formally arrested in the hallway and given his rights no probable cause existed for his arrest, probable cause certainly arose upon the discovery that the car from which the safe had been dragged was registered to the man standing in the hallway and meeting the description given by the anonymous caller as the man who had been dragging the safe. At that point defendant's arrest was based on probable cause. In summary, we believe that the subsequent on-the-scene investigation conducted by the officers corroborated the information conveyed by the tipster and was sufficient to warrant the belief of these officers that probable cause existed to arrest defendant for receiving stolen goods.
Because his arrest was legal, those "fruits" of the arrest (i. e. the search of the home and car, as well as the two confessions given by the accused) were also properly obtained. Therefore, we conclude that the trial judge did not err when he denied the defendant's motion to suppress.
For the reasons assigned, the conviction and sentence of defendant Thomas Phillips are affirmed.
NOTES
[1] The exact measurements of the safe are thirty inches by twenty-two inches by twenty-two inches.
[2] Officer Alexander further testified that after finding the safe they placed a call to their dispatcher by police radio informing him of the serial number on the safe; and that shortly thereafter they were advised by radio that the safe had been "taken in a burglary the previous night before from a McKenzie Bakery" located in that general area. The officer stated that this information was forwarded by a Fourth District Unit car, number 402 he thought, but he could not identify the person who transmitted the information. Because the officer's testimony as to the fact that he had learned of the bakery robbery before making the arrest is not corroborated by other testimony, and because it is seemingly contradicted by the police report revealing that defendant was originally charged with the possession of a safe, "source unknown," we do not consider this testimony in making our decision. This is not to say that we disbelieve Officer Alexander's testimony.
[3] Article 213 of the Code of Criminal Procedure provides that "a peace officer may, without a warrant, arrest a person when: . . . (3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer."